### E. K. WOOD LUMBER CO. v. MOORE MILL & LUMBER CO.
### No. 8612.

Circuit Court of Appeals, Ninth Circuit.

May 27, 1938.

Aaron N. Cohen and H. W. B. Taylor, both of San Francisco, Cal., for appellant.

Eugene K. Sturgis, of Oakland, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment of non-suit awarded defendant against plaintiff by the District Court of the United States for the Northern District of California, Southern Division. The case is one for damages alleged to have resulted from a breach of contract. It was commenced in the Superior Court of California and removed to the United States District Court upon petition of appellee. The answer denied each allegation of the complaint except the corporate character of the defendant. No affirmative defense was alleged.

The case was tried to a court and jury, and at the conclusion of plaintiff's case the defendant made two motions; one to strike all of the evidence introduced by the plaintiff, and one to grant a non-suit. The court granted both motions and ordered the evidence introduced by plaintiff stricken, and ordered a judgment of non-suit entered in favor of the defendant and against the plaintiff. The plaintiff below appeals to this court from the judgment entered and seeks a reversal thereof upon four assignments of error.

The plaintiff E. K. Wood Lumber Company and the defendant Moore Mill & Lumber Company were at all of the times mentioned in the complaint corporations existing and doing business under and by virtue of the laws of the respective states of their organization. The plaintiff is a California corporation. The defendant is an Oregon corporation and during all of the times referred to was legally qualified to do and was doing business in California.

Mr. Harry Vincent was and is the general manager of the plaintiff and in all of the matters with which this action is concerned Mr. Vincent acted for and on behalf of the plaintiff corporation.

Mr. Carl (C. R.) Moore on direct examination testified: "I have had since 1932 an office at 525 Market Street, San Francisco. I represent defendant. I was the agent for defendant in the matter of obtaining orders for lumber. Went out and solicited orders." Mr. Carl Moore was the only representative of defendant who had contact with the plaintiff in the matters with which we are here concerned. Mr. Ralph Moore and Mr. John Moore were officers of the defendant corporation and Mr. W. J. Conrad was its general manager. They appear from the evidence to be functioning in and from the plaintiff's

offices in Bandon, Oregon, where are situate its lumber mills.

It appears from the testimony of Carl Moore, who was called to the witness stand by the plaintiff under the provisions of California Code of Civil Procedure, sec. 2055, that Wood Company was figuring on furnishing lumber to a contractor-builder in Oakland, California, and that Carl Moore was in turn soliciting Wood Company's business for the Moore Company. Carl Moore and Harry Vincent conferred about the situation and a price quotation letter was sent Wood Company by Moore Company from its San Francisco office which was as follows:

"MOORE MILL & LUMBER COMPANY

"Pacific Coast Forest Products

Mills at

| Bandon, Ore. | San Francisco | Offices at |
| | April 1st, 1935. | Bandon, Oregon |
| | | 525 Market St. |
| | | San Francisco |

E. K. Wood Lumber Co.,
No. 1 Drumm St.,
San Francisco, Calif. Attention: H. L. Vincent, Agreements Contingent Upon Delays Beyond Our Control. Orders Subject to Approval of Home Office. Quotations Subject to Previous Sale. Advance in Freight Rates, or Change Without Notice. All Federal Taxes for Buyer's Account
    Gentlemen:
    This is to confirm prices 'phoned to you this morning on stock to be delivered at your yard in Oakland. The list on which the figures are based is as follows:

| | Per M ft. |
| --- | --- |
| 200 M ft. 1x8 R/L Sel Com.Fir | |
| Shiplap S1S | $16.50 |
| 650 M ft 1x8 "   #3 Com. S1S1E | 11.00 |
| (Alternate: 520M ft #1 | |
| Common) | 15.50 |
| 100 M ft 2x6—12, 13&16' — #3 Com.S1E | 11.00 |
| (Alternate: 60 M ft #1 | |
| Common | 15.00 |
| 250 M ft. 2x4 R/L #3 Com. S1E | 11.00 |
| (Alternate: 200 M ft #1 | |
| Common | 15.50 |
| 50 M ft. (2x12,18&20' Com.Rough | 15.50 |
| 2x10 14          do. | " |
| 6x6 R/L to 20'    do. | " |
| 6x8 "     "       do. | " |
| 8x8 "     "       do. | " |
| 4x12 "    "       do. | " |

1250 M ft.

"Delivery over six months period starting in May, estimating four or five separate trips.
"These prices as given are A. S. T. Oakland, subject only to the usual 2% cash discount.
"Yours truly,
    "Moore Mill & Lumber Company,
"CRM/H                By C. R. Moore."

[Letterhead and matter immediately under "Attention: H. L. Vincent" and above salutation "Gentlemen" is printed in plain black faced legible type extending in two lines across letter sheet. The rest of the letter, except for the signature "C. R. Moore" is typewritten. This letter was forwarded to and filed with the Clerk of this Court under and by stipulation of counsel and its description herein is made after careful inspection of the original instead of the copy printed in the record.]

Upon the same day that this letter was dispatched, Carl Moore wrote the Bandon Office concerning this prospective business and enclosed a copy of the price-quoting letter. The testimony as above related, together with the quotation letter and C. R. Moore's letter to the Bandon Office, came into evidence without objection. The letters were designated plaintiff's Exhibits 1 and 2, respectively.

Mr. Moore was then asked the following questions: "Now, following the letter that you directed to the home office * * * and the quotation you sent * * * you had another conversation with Mr. Vincent at noon on April 3rd, 1935, isn't that correct?"

To which Mr. Moore answered:

"That is to the best of my recollection."

"Question: And at that time isn't it a fact that the subject of discussion at that conversation concerned the necessity of reduction of No. 3 common lumber price indicated in your quotation, so that the E. K. Wood Lumber Company could obtain the Parker and Associates job?"

Counsel for defendant objected to the question "upon the ground that the answer to the question is not admissible, partially, upon the evidence so far adduced. This is apparently a suit upon a contract in excess of the value of $500.00 and I therefore object to any oral testimony from this witness or any other witness, with the relation to the terms of that contract, or any part thereof."

The court sustained the objection with the statement that defendant would have the privilege of renewing the offer of such testimony.

The plaintiff then proceeded to introduce letters, marked Exhibits 3 to 9, inclusive, all (except Exhibit 7) over the defendant's objection that there were other and intervening letters between the office at Bandon and the Moore Mill & Lumber Company at San Francisco relating to the same transaction.

The defendant then, through what is mistakenly referred to in the record as

cross-examination [see § 2055 Cal.C.C.P.], introduced letters and telegrams marked Exhibits A to E inclusive. To these communications the plaintiff objected on the ground that each "was irrelevant, incompetent and immaterial, hearsay, not binding on plaintiff and not proper cross-examination." The plaintiff reserved its exceptions to the court's adverse rulings and assigns the admission of the communications into evidence as error but does not argue or urge the assignment in its brief. It will therefore not be noticed. Rule 24(6) of this Court.

All of the communications are here digested in the order of their dates.

Plaintiff's Exhibit 1. April 1st. The price-quotation letter already quoted in full.

Plaintiff's Exhibit 2. April 1st. Carl Moore to officers of Moore Company.

Informs as to quotations: "The prices, as I have given them, (Wood Company) are about the best level on the present market so far as my information goes today."

Plaintiff's Exhibit 3. April 3rd. Carl Moore from San Francisco to Moore Company, Bandon, Ore. "Right now there is a price of $10.00 in on the big E. K. Wood inquiry I told you about Monday. I had to shrink the #3 on that 50¢ in order to keep E. K. Wood in line * * * I doubt if they get that job * * * My intention was to keep E. K. Wood feeling good towards us so we can pick up occasional 50M from them at a decent price."

Defendant's Exhibit A. April 4th. J. S. Moore from Bandon, Ore., to Carl Moore, San Francisco. "On the E. K. Wood school inquiry. We are not in the market for #3 cutting orders and for gosh' sakes, clear your skirts of that 650M and 250M #3 bid. We cannot furnish it."

Plaintiff's Exhibit 4. April 5th. Carl Moore from San Francisco to Ralph and John Moore, Bandon, Ore. "While we are talking about E. K. Wood, I must tell you that that great big order for Oakland is ours, excepting that I had to reduce the #3 .50¢ as I told you * * * I presume without that 50¢ off, we could not have gotten the business * * * E. K. Wood will have the confirming order in here tomorrow or Monday and in the meantime, they ask me to say that the mill can start right in laying aside stock which will apply on the order. * * *"

Defendant's Exhibit B. April 5th. J. S. Moore from Bandon, Oregon to Carl Moore, San Francisco. "Remember that we are not interested in #3 cutting * * * Was pleased to hear that there was a bigger sucker than we were on the E. K. Wood inquiry, but you should still clear your skirts so that we are not stuck."

Plaintiff's Exhibit 7. April 8th. Letter from Wood Lumber Co. to Moore Mill & Lumber Company, San Francisco, confirming "verbal order given to Mr. Carl Moore, covering lumber" for designated job.

Plaintiff's Exhibit 5. April 9th. W. J. Conrad from Bandon, Oregon to "Carl Moore, Esq., Moore Mill & Lumber Co., San Francisco."

States recently been concerned about extent of orders "especially in view of the fact that you have quoted on an order for E. K. Wood for approximately 1,000,000 * * * I am a little concerned about the large amount of #3 common we will have to cut, but we will do the very best we can and keep you advised of progress. Haven't as yet received the E. K. Wood order, but no doubt it will be coming along soon."

Plaintiff's Exhibit 6. April 9th. R. T. Moore, then the President of Moore Company, from Bandon, Oregon to Carl Moore at San Francisco.

"The uppermost thing I have in my mind today is that we have four million feet of unfilled orders on our books. Your E. K. Wood order will run this up nearly five million, therefore, it is up to us to immediately raise our price on Common items at least $1.00 per thousand."

Defendant's Exhibit E. Five telegrams. April 15th. Moore Mill & Lumber Co.—Conrad—from Bandon, Oregon, to Moore Mill & Lumber Co. San Francisco.

"We are returning E. K. Wood orders two two four and five also last Hayward orders. Absolutely unable take on this business account previous orders on hand suggest you do not accept any additional common business unless confirmed by us at increased prices but can take on some clear. Am writing."

April 15th. From "Moore Mill & Lumber Co." San Francisco to same at Bandon, Oregon.

"Advise reconsidering Wood orders last Hayward orders already confirmed."

April 16th. Answer to above telegram of April 15th. Moore Mill & Lumber Company—Conrad from Bandon, Oregon

to Moore Mill & Lumber Company, San Francisco.

"Sorry but unable to reconsider Wood orders Will accept Hayward orders subject to delivery next trip. * * *"

April 18th. Moore Mill & Lumber Co., from San Francisco to same Bandon, Oregon.

"Account delayed final decision on Oakland order Wood deems mill responsible and asks acceptance of order on participation in any loss incurred by buying elsewhere wire reply immediately * * *"

And in reply, same date, same parties:

"If Wood order so desirable they should be able to purchase from others at same price or less. We do not consider ourselves liable for rejection of order and cannot alter decision."

Defendant's Exhibit C. April 15. Letter C. R. Moore, San Francisco to Moore Mill & Lumber Company, Bandon, Oregon. Acknowledges first of telegrams introduced as Exhibit E.

Defendant's Exhibit D. April 20th. J. S. Moore from Bandon, Oregon to Carl Moore, San Francisco.

"You are making a lot of grief for us over this E. K. Wood order and I cannot see the reason. We notified you * * * the 4th that we could not furnish them. That certainly was in plenty of time. Any failure is treaceable right back to you. Don't pass the buck to the mill when talking with Vincent, for if you do it is natural that he will be angry at the Moore Mill & Lumber Company. Take the blame as you should and try to keep this company from getting in bad.

"We don't know just how we should tell you when an order is attractive * * * It would seem that although words were few in my letter of the 4th, they were very plain.

"* * * It was not until Monday that I found you had sent the order on through. I asked Conrad and Ralph about it and they were both surprised as they had understood we had rejected it. Hence the word Monday. This delay added to get the other three days until this Thursday is considerably * * * You are just making it hard for yourself by putting it off so long.

"Have been checking over the correspondence on the Wood case. Sort of wonder just how you figured although I might object to the order at $11.00, it might be interesting at $10.50. Many more of these

sort of fiascos and they certainly will be walking slow behind me. Carl, you must have an idea as to what is attractive to a mill."

Mr. Harry Vincent then testified on behalf of the plaintiff: That on April 3rd he told Carl Moore that they had to reduce the price of number 3 common $1.00—his company would stand 50¢ if Moore would stand 50¢—he told Moore on April 4th they had the job and would buy of him. He testified that he was relying on quotations in letter and as changed orally. Moore and he talked over details April 5th and the manner of delivery to start in May and end in October—after his company had received written order from the contractor, he sent Moore "a confirmation of the order" [Exhibit 7].

Mr. Vincent further testified that Moore did not indicate that the order was subject to confirmation by the Bandon Office until April 15th when he told Vincent that the mill was sending the order back. Moore said he would ask the mill to reconsider but the mill wired back the next day declining to reconsider it. The defendant objected to the admission of all of Vincent's testimony regarding conversations with Carl Moore. However, the record is silent as to what the objections were to the introduction of such testimony. Privilege of making a motion to strike Vincent's testimony was reserved by defendant by consent of the court.

The witness then testified to buying lumber in the open market and produced a list of purchases of lumber from June 5th, 1935, to November 15th, 1935, showing that the difference between the price contained in the confirming letter [Exhibit 7], and the price paid amounted to $6,123.19.

This testimony came in under the objection that "* * * no foundation has been laid by showing the existence of any contract, and, secondly, upon the further ground that the purchase of lumber from others at some subsequent time is not the proper measure of damages."

The plaintiff called Mr. James McNab, Superintendent of plaintiff's Oakland yard, and made the following offer of proof: "Mr. Cohen: I want to make an offer of proof for the record. I want to show by this witness that for a period of two years prior to April 1, 1935, Mr. McNab, on behalf of the E. K. Wood Lumber Company, made a number of purchases from Carl Moore, representing the Moore Mill and

Lumber Company, and that as to the ordinary type of lumber, particularly No. 3 common, which represents 85 per cent. of the lumber involved in the subject-matter of the controversy before the Court, that there never was mentioned or considered that Mr. Moore, in San Francisco, was required to obtain confirmation of those orders from the mill at Bandon," to which the defendant objected on the ground that it was immaterial, irrelevant and incompetent and had nothing to do with the subject matter of the controversy. The objection was sustained and exception noted. The plaintiff rested and the defendant made his motion to strike all of the testimony of the plaintiff and a motion for a non-suit. The court granted the motion for a non-suit, but the record is not clear as to the court's ruling on the motion to strike. However, as the record would seem to indicate that the motion was granted, and as both parties have proceeded upon the premise that it was, we have done the same. And although defendant made timely objections to the receipt of oral testimony as to the making of a contract as contravening provisions of the statute of frauds, it specified no ground for the basis of its motion to strike.

■ Appellant assigns the granting of this motion as error, and both parties in their briefs have merged their treatment of this assignment with their assignment attacking the non-suit order. We shall follow a like course. A motion to strike out or exclude all of the evidence, like a demurrer to the evidence or a motion for non-suit, tests the sufficiency of the evidence. 64 C. J. 390, § 384 et seq. We shall therefore pay no further attention to the first assignment.

The third assignment of error concerns the admission of correspondence by defendant as of cross-examination of Carl Moore, but we have seen that this assignment has been abandoned and we shall give it no further consideration.

The fourth assignment premises error upon the refusal of the court to permit testimony of James McNab, the Manager of the Wood Oakland lumber yard, to the effect that purchases had been made by him for Wood Company from Moore Company. But however the court should have ruled upon this offer, is of no concern upon this appeal, for we hereinafter hold that such testimony, had it been received, could make no difference in our conclusion.

■ The broad question presented upon this appeal is whether, giving to plaintiff's evidence all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict were given. Bannister v. Los Angeles Ry. Corp., 203 Cal. 427, 429, 264 P. 756. If this question is to be answered in the affirmative plaintiff was properly nonsuited—otherwise the judgment must be reversed. The more specific problem before us is whether there is evidence from which it may properly be inferred that the parties entered into a legally enforcible contract which was breached by defendant to plaintiff's damage.

At the outset it is necessary to take note of certain California statutory provisions, asserted by appellee to be determinative of the case in its favor.

Sections 1624a and 1724 of the California Civil Code and section 1973a of the California Code of Civil Procedure provide: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless * * * some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

Section 2309 of the California Civil Code provides: " * * * authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."

Appellee argues that since it appears from appellant's evidence that the agreement sued on was a contract for the sale of goods "of the value of five hundred dollars or upwards" and since it nowhere appears that the alleged agreement was in writing, the agreement is "not enforceable by action." Appellee further argues that since it appears from appellant's evidence that it asserts that the claimed agreement was entered into with an agent acting on appellee's behalf and that since it nowhere appears that the alleged agent had written authority to enter into the contract, that appellant also failed on this score to establish an essential element of his case.

The defense of the statute of frauds having been raised by appellee's answer which denied the making of the contract, the burden was on appellant to prove that the contract sought to be enforced was in writing. Walsh v. Standart, 174 Cal. 807, 810, 164 P. 795; Feeney v. Howard, 79 Cal. 525, 21 P. 984, 4 L.R.A. 826, 12 Am.St.Rep. 162; Videau v. Griffin, 21 Cal. 389, 391; Jamison v. Hyde, 141 Cal. 109, 112, 74 P. 695.

It was likewise appellant's burden to prove that the agent had written authority to enter into the contract. See Frudden v. Peppers Fruit Co., 126 Cal.App. 544, 14 P.2d 874; Standard Livestock Co. v. Bank of California, 67 Cal.App. 381, 227 P. 962, 967; Cooke v. Newmark Grain Co., 54 Cal. 283, 201 P. 615; Garcia & Maggini Co. v. Colvin, 53 Cal.App. 79, 199 P. 1113, 1114.

An argument is made that appellee, by failing to object to the admission of the testimony of Carl R. Moore to the effect that he was the "agent for defendant in the matter of obtaining orders for lumber" and as to the fact of his having had a conversation with Mr. Vincent on April 1st, 1935 regarding the "furnishing of lumber," waived written proof of the contract and of the agent's authority. There was no waiver by failure to object to the admission of this evidence. The evidence admitted neither constitutes proof of the formation of a contract, nor proof of authority in the agent to accept any orders, much less orders required to be in writing. In Nunez v. Morgan, 77 Cal. 427, 19 P. 753, and Durbin v. Hillman, 50 Cal.App. 377, 195 P. 274, the cases relied upon by appellant in this connection, the evidence admitted without objection constituted full and complete proof in one case of the contract counted on, and in the other, of the authority of the agent. They consequently are not authority of aid to appellant.

Appellant contends that the provisions of Civil Code, sec. 2309, are not applicable where a contract is made through a corporate agent. There exists a conflict in the California decisions upon this point. For example, in Carrier v. Piggly Wiggly of San Francisco, 11 Cal.App.2d 180, 182, 183, 53 P.2d 400, 401, in answer to the contention that, since the contract sued on was required to be in writing, the authority of the corporate agent to enter into the same was required to be in writing, it was said:

"Corporations can act only through the agency of natural persons, and it has been held that the authority of an agent of a corporation need not be in writing, so far as the statute of frauds is concerned. McCartney v. Clover Valley Land & Stock Co. [8 Cir.,] 232 F. 697, citing Boggs v. Lakeport Agricultural Ass'n, 111 Cal. 354 [43 P. 1106]."

But in Corporation of America v. Harris, 5 Cal.App.2d 452, 453, 459, 43 P.2d 307, 310, where the cases are collated, it was said: "The weight of authority, we believe, supports the view that the agent of a corporation, whether he be an executive officer or not, may not, merely because of his office, bind his principal upon a lease of real property for longer than a year, unless he has written authority from his principal so to do."

It is worthy of note that in the Piggly Wiggly Case, supra, California Civil Code, sec. 2309, is not noticed in the opinion. It should also be noted that McCartney v. Clover Valley Land & Stock Co., supra, cited and relied on in the Piggly Wiggly Case, expressly limits the exception, there stated, to the executive officers of a corporation. And Boggs v. Lakeport Agricultural Ass'n, supra, cited in the McCartney Case, is a case dealing with the authority of the "president" of a corporation. It does not expressly appear from the facts stated in the Piggly Wiggly Case what position in the defendant corporation was held by the agent there involved, but it is a fair assumption from the facts that he was an executive officer. In the case of an executive officer of a corporation an exception from the requirement of written authority finds at least plausible support in reason in that, as said in the McCartney Case: "The executive officer of a corporation is something more than an agent. He is the representative of the corporation itself." (Page 701.) However, it is not apparent that in the case of an ordinary agent any more reason exists for a special rule to be applied where he is employed by a corporation than where he is employed by an individual proprietorship or partnership.

We need not here decide what rule is applicable in a case involving an executive officer of a corporation, for there is no testimony in the record before us from which it may be inferred that Carl R. Moore was an officer of appellee corporation. We hold that in the present case it was necessary for appellant to show the

agent's written authority to enter into the contract sued on.

But appellant argues that the agreement upon which he brings his action was ratified by appellee, and that consequently the necessity of proof of written authority was obviated. We accept appellant's statement as to the effect of ratification but disagree with his contention that ratification appears from the evidence before us. California Civil Code, sec. 2310, provides: "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof."

■■ In view of the quoted code section it is evident that in the present case it was incumbent upon appellant to show a written ratification. This he failed to do. Such writings of the principal as were introduced show a disaffirmance by it of its agent's acts rather than a ratification thereof. The response by appellee to the first notice it received of Carl R. Moore's action in this matter was an assertion that it could not furnish the lumber desired and a warning to the agent to "clear your skirts of that * * * bid." And we think that the negative attitude evidenced by this first communication was maintained by appellee throughout the course of the correspondence regarding the transaction.

■ Appellant argues that appellee is estopped to assert that the agent had no written authority. We see no reason for applying a different rule in respect to this contention than that applicable where estoppel is claimed with respect to the statute of frauds proper. In the latter case it is necessary to show not only a change of position to the injury of the party asserting the estoppel, but also that there has been conduct on the part of the opposite party amounting to a representation that he will not avail himself of the statute to escape his agreement. In Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88, 134 Am.St.Rep. 154, the case most strongly relied upon by appellant, there was a definite promise to give a written contract, which promise was never performed. The court in holding that there was an estoppel to assert the statute quoted from 5 Brown on Statute of Frauds, § 457a, as follows: "A plaintiff * * * must be able to show clearly

* * * not only the terms of the contract, but also such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance * * *." (Page 795, 106 P. page 94).

See, Restatement of Agency, § 31.

In this case there is no evidence from which it could be inferred that appellee represented either that its agent had written authority or that it would not avail itself of the defense of the statute. Assuming, without deciding, that there is sufficient evidence from which it may be inferred that it was represented that the authority of Carl R. Moore went beyond the mere taking of orders subject to confirmation by appellee and included the making of contracts of sale, there is no evidence that such representations went to the extent of allowing for an assumption that the agent had authority to enter into contracts required to be in writing. If we take as proven all the facts offered to be proved by appellant in regard to its past transactions with the appellee we have at best only evidence that on prior occasions contracts for the sale of goods had been entered into through appellee's agent without a requirement of confirmation by the "home office" of appellee. There was no offer to prove that the said contracts were for the sale of goods "of the value of five hundred dollars or upward" or that for any other reason they were contracts required to be in writing. Appellee could in no way be estopped to assert the defense of California Civil Code, sec. 2309, unless it represented that its agent was authorized to enter into contracts required to be in writing.

■ We conclude that the appellant having failed to present or offer any evidence from which the trial court could properly have inferred that the authority of the agent to enter into the contract was in writing, or that written authority was not as a matter of law essential to recovery, the non-suit was properly granted. Coughran v. Bigelow, 164 U.S. 301, 17 S.Ct. 117, 119, 41 L.Ed. 442.

In this view of the case there is no necessity for determining the question as to whether, aside from the failure to prove authority in the agent, there was sufficient

evidence from which it could be inferred that an otherwise valid and enforceable contract was entered into between the parties.

Affirmed.