[Civ. No. 12662.  Second Appellate District, Division Two.—August 19, 1940.]

MARY DREIFUS, Respondent, v. DONALD FREDERICK MARX et al., Defendants; W. E. HESSEY, Appellant.

Kiggens & Hoffman for Appellant.

Edwin O. Loucks for Respondent.

MOORE, P. J.—From a judgment in favor of plaintiff, cancelling certain agreements, quieting her title to certain properties, erasing from the records a deed of trust which evidenced a lien upon plaintiff's Long Beach property, and adjudging her to be entitled to the possession of certain moneys, the defendant Hessey takes this appeal.

The action included as defendant, one Marx, who was the primary factor of plaintiff's misfortune. Said defendant had induced plaintiff to convey to him certain valuable properties in Long Beach and San Pedro. Notice by plaintiff of rescission of her transactions with defendants had been served and recorded. It was after the recording of her notice of rescission that appellant made his loan upon the property described in said notice. Summons having been served upon both defendants, Marx defaulted.

On July 21, 1936, plaintiff was 77 years of age, physically infirm and mentally unequipped to engage in the transaction of matters involving valuable properties without the advice of counsel. She was the owner of lot 11, block G, Bay View Heights, in Long Beach, and other properties in San Pedro.

On said date, Marx caused plaintiff to enter into an exchange agreement whereby he should convey to plaintiff the title to a parcel of land in Palm Springs, Riverside County, in exchange for lot 11 and the sum of $400. On the 24th day of July, 1936, plaintiff and Marx executed another agreement by the terms of which Marx agreed to procure a building site in Palm Springs and vest the title thereto in plaintiff, and to construct thereon a five-room bungalow in exchange for her San Pedro lots. Plaintiff conveyed her lots in Long Beach and San Pedro to Marx and paid him the sum of $400 *for which he gave her nothing in return.*

Her anxieties having stimulated her to action, plaintiff then employed counsel to advise her with respect to her dealings with Marx. Acting upon the advice of her counsel, a notice of rescission of all agreements and conveyances theretofore made by plaintiff upon the grounds of fraud, undue influence and want of consideration was served on Marx, July 28, 1936. This notice described the real property involved; it was signed and acknowledged by plaintiff. On the following day the notice was recorded in the office of the county recorder of Los Angeles County, the situs of the properties. At the same time, plaintiff's attorney advised Marx that all dealings thereafter to be transacted between Marx and plaintiff should be in the presence of said attorney. But Marx was not to be throttled by the advice of plaintiff's counsel. On July 31, 1936, he caused plaintiff to visit his office where he stated that he was washing his hands of the whole affair and was returning plaintiff's property to her. Believing and relying upon the statements of Marx, and at his request, plaintiff signed papers presented to her by Marx without reading them. It developed that plaintiff had unwittingly signed a writing by the terms of which it was provided that Marx was to convey to her the San Pedro properties and a lot in Palm Springs and that he should retain the Long Beach lot and the $400. At the same time and in equal ignorance, she signed a writing by the terms of which she reaffirmed the conveyance of lot 11 under date of July 21st, as a valid transfer. Also, in like manner, she signed a letter by the terms of which she discharged her said attorney and declared that her differences with Marx had been settled and that her property had been returned to her. Marx did, in fact, reconvey to plaintiff her San Pedro prop-

erty but retained title to the Long Beach lot, which is the only property here involved.

Within a week after plaintiff recorded her notice of rescission on July 29th, appellant commenced negotiations with Marx with a view of lending him the sum of $2,200. In order to procure this loan, Marx offered as security the Long Beach lot. On the 5th day of August, 1936, an escrow was opened in the Farmers and Merchants Bank of Long Beach in which appellant deposited the sum of $2,200 while Marx placed with the same escrowee his promissory note for $2,200, and a deed of trust conveying lot 11 in Long Beach to the Farmers and Merchants Trust Company as the trustee with appellant as beneficiary. Following instructions, the bank ordered a policy of title insurance from the National Title Insurance Company which soon discovered and reported the presence upon the deed records of the notice of rescission dated July 29th. This discovery was disclosed by the title company to both Marx and the appellant and thereupon this title company declined to issue a policy of title insurance and so advised the escrowee.

After appellant had been informed by the title company of its refusal to issue its policy ''because there was some discrepancy over the deed or something'' Marx and appellant instructed the bank to order the policy from an altogether different title company. In due season a policy showing no defects in the title of lot 11 was issued by the last-mentioned title company and delivered to said bank. The events heretofore narrated were brought to the knowledge of appellant but subsequent developments were withheld from him.

On August 11th plaintiff served another notice of rescission upon Marx, demanding a rescission of all prior transactions upon the grounds of fraud, undue influence, duress and failure of consideration. This second notice was not recorded and was never brought to the attention of appellant.

One of the assignments of error made by appellant is his lack of knowledge of the last-mentioned notice of rescission. At the time of the closing of the escrow and of the recording of the deed of trust on the 18th day of August, 1936, not only was the notice of rescission unknown to appellant but on said day plaintiff's declaration of July 31, 1936, reaffirming the validity of her said conveyance to Marx under date of July 21st was, itself of record. Appellant's lack of knowl-

edge of the existence of the one instrument and his iteration of his knowledge of the existence of the other have apparently afforded him much comfort in his enthusiastic rehearsal of the events preceding the recording of the trust deed.

On August 19, 1936, this action was instituted and a notice of *lis pendens* was filed in the office of the county recorder.

In order that one item of the judgment may be understood, we must observe that the bank paid $2,000 of the escrow fund to Marx and retained $200 thereof, in pursuance of its said escrow instructions, for the purpose of effectuating repairs upon the Long Beach property. In concluding the judgment, the trial court decreed that ''all moneys now being held by the defendant Farmers and Merchants Trust Company of Long Beach, under the hereinbefore described deed of trust be paid over to the plaintiff''. Clearly, the court intended to refer to the said $200 retained by said bank out of said escrow.

Inasmuch as the failure of Marx to deny or answer the complaint was to admit all of its material allegations essential to the judgment (*Strong* v. *Shatto*, 201 Cal. 555 [258 Pac. 71]) there is no question that the judgment against Marx is amply supported by the evidence, as appears from the positive findings of the court upon all of the material allegations of the complaint in favor of plaintiff. Henceforth, therefore, we shall deal only with the assignments of appellant whereby he attacks the validity of the judgment as to himself.

So far as appellant's rights are concerned, his position would not be improved were we to hold that the judgment against Marx is sustained upon one or upon all of the grounds for rescission set forth in the notice thereof. Appellant contends there is no evidence to support the finding that he had knowledge that the title of Marx to lot 11 was obtained through fraud, duress, and undue influence, but in making this contention appellant loses sight of the fact that the principal point is not so much as to the grounds of rescission asserted by plaintiff in her notice, but rather that the recording of said notice on July 29, 1936, was sufficient to give constructive notice of a defect in the title of lot 11. Appellant wisely and properly invokes the rule that the mere fact that an instrument has been recorded does not give constructive notice thereof unless there is some statute authorizing or permitting such instrument to be placed of record and

at the same time making the effect of such recording constructive notice.   (22 Cal. Jur. 615; *Parkside Realty Co.* v. *MacDonald,* 166 Cal. 426 [137 Pac. 21].)

There is indeed no special statute providing for the recording of a notice of rescission.   Therefore, to test the virtue and effect of said notice, we must refer to a general statute, to wit, section 1158 of the Civil Code.   This section provides "any instrument . . . affecting the title to or possession of real property, may be recorded under this chapter . . . ". In deciding that a writ of attachment was not an "instrument" within the meaning of the above provision, the Supreme Court held that the word "instrument" as used in such section, referred to "some written paper or instrument signed and delivered by one person to another transferring title to or creating a lien on property or giving a right to a debt or duty".   (*Hoag* v. *Howard,* 55 Cal. 564, 565.)   But we cannot concede that the recording of a writ of attachment, issued by the clerk of a court to levy upon any property exempt from execution, is in the same class with the act of recording a notice of rescission which must, of necessity, describe certain transactions affecting real property.   The rescinder solemnly asserts claim as the legal owner thereof. In this case, the notice of rescission referred to a writing signed by plaintiff and delivered to Marx in which she asserted that a recorded conveyance theretofore executed by her to Marx was of no force or effect.   In the language of said code section, the notice of rescission did affect the title to real property.   Its effect was to declare to the world that the author of the notice had by the delivery of a deed been defrauded by the party upon whom the notice had been served, or had failed to receive consideration for the deed, which fact was notice of the invalidity of such prior deed.   By the presence of said notice upon the official records of the county, appellant had constructive notice of the contents of the instrument which was her initial step in her rescissory proceedings to nullify the alleged fraudulent transaction.   (Civ. Code, secs. 1213, 1215.)   In the case of *Bell* v. *Sage,* 60 Cal. App. 149, at 153 [212 Pac. 404], the court said: "When the terms of the statute are complied with the record becomes conclusive notice, often contrary to the fact."

█   Appellant contends that the fact that the court failed to find that appellant had notice of the failure of considera-

tion as well as of fraud, duress and undue influence is fatal to the judgment. On the contrary, the failure to find such fact is immaterial, for the reason that constructive notice of the service of notice of rescission is notice of all of the contents of such writing. (Civ. Code, sec. 1213.) It was not necessary for the court to find that appellant had actual notice of the various and specific grounds for rescission set forth in the notice. However, we shall assume that the court impliedly found that appellant had constructive notice of the grounds for rescission, one of which was failure of consideration.

In his zeal to avoid the effect of the constructive notice of the grounds of rescission, appellant contends that the document signed by plaintiff July 31st, purporting to reaffirm the validity of her said conveyance to Marx of July 21st had the effect of negativing the notice of rescission. He contends that he had completed the loan transaction in reliance upon the affirmatory writing which was obtained from Marx two days after the recording of the notice of rescission. But neither the pleadings nor the evidence contains the slightest information that appellant had knowledge of the existence of the affirmatory writing at any time prior to the completion of the escrow. Nothing contained in the record indicates that appellant could have placed any reliance upon the contents of the affirmatory declaration. Since it was not recorded until August 18th, after the close of the escrow, we cannot presume that he could have had any notice thereof and of course he had no constructive notice of its existence. It cannot avail appellant that the court failed to find that the affirmatory declaration was signed and delivered to Marx and recorded concurrently with the deed of trust. Its only possible support to appellant's appeal lies in his assertion that he had knowledge thereof and relied upon it in completing his loan. But he should have pleaded and proved his reliance upon the affirmatory writing to warrant his invoking its existence to aid his appeal. It follows, therefore, that the absence of such finding could not operate prejudicially to appellant.

Not only is the trust deed devitalized because of appellant's notice of plaintiff's attempted rescission, but to his own negligence must be ascribed the responsibility for appellant's own undoing. This we announce, not upon the strength

of any course of reasoning but upon an often cited statute that proclaims the reward of the diligent: "Where one of two innocent parties must suffer by the act of a third, he by whose negligence it happened, must be the sufferer." (Civ. Code, sec. 3543.)

In addition to the fact that the notice of rescission was recorded prior to the time the deed of trust was recorded thereby supplying notice of a defective title, the facts surrounding the entire transaction were such as to lead to the conclusion that appellant was negligent in failing to take notice or discover the defect in the title. Section 19 of the Civil Code provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, had constructive notice of the fact itself, in all cases in which by prosecuting an inquiry he might have learned such fact."

Before approaching the conclusion of his negotiations for the loan and before the escrow was completed, appellant learned that the National Title Company had refused to insure the title of the Long Beach lot "because there was some discrepancy over the deed or something". Notwithstanding this information, he made no effort to determine the nature of the discrepancy. The facts of which appellant had knowledge were such as to put a person of ordinary prudence upon inquiry. The record discloses that even an inquiry at the offices of the said title company would have put appellant in possession of the facts that would have convinced him of the defect in the title. In view of all of the circumstances, as between appellant and plaintiff, it is clear that it was appellant's negligence which created the present unfortunate situation. He must bear the loss occasioned by his own negligence. (Civ. Code, sec. 3543.)

■ Referring to that part of the judgment mentioned in an initial paragraph of this opinion whereby money held by said trust company was awarded to plaintiff, it may be added here, in disposing of that part of the judgment that the sole connection of said trust company with the transaction was the fact that it was trustee under the trust deed. Assuming that it was the purpose of the court to award to plaintiff said $200 held by the bank, then we must hold that part of the judgment to be erroneous for the reason that the bank is not a party to this action. Plaintiff sought no money judgment

against appellant. In view of the fact that no issue was tendered with respect to the $200, the trial court had no jurisdiction to determine the respective rights of Marx, the appellant, and the bank to this money.

It is therefore ordered that the trial court be, and it is hereby, directed to strike from its judgment that portion which reads: "that all moneys now being held by the defendant Farmers and Merchants Trust Company of Long Beach, a corporation, under the hereinabove mentioned deed of trust, be paid over to the plaintiff". As so modified, the judgment is affirmed.

Wood, J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 16, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 17, 1940.