[Civ. No. 5419.   Fourth Dist.   Sept. 13, 1956.]

CREDIT BUREAU OF SAN DIEGO, INC., (a Corporation), Appellant, v. RAYMOND B. BEACH et al., Defendants; GLENN R. PRESCOTT, Respondent.

Ruel Liggett for Appellant.

Carlyle O. Buckner for Respondent.

GRIFFIN, Acting P. J.—Plaintiff, as assignee of the claim of San Diego Neon Sign Company, a corporation (hereinafter referred to as the sign company) brought this action to recover $2,771.50, plus interest and attorneys' fees, from defendants Raymond B. Beach, Mrs. Glenn R. Prescott, and James W. Thompson, individually and against the first two named as doing business as Beacon Inn, based upon a claimed assignment of a Neon sign agreement between the sign company and defendant Thompson. Beach defaulted and judgment was entered in plaintiff's favor against him. Thompson appeared by answer and cross-complaint, denied the allegations of the complaint and alleged, as against defendants Beach and Prescott, that if defendant Thompson was held liable under plaintiff's complaint he should have judgment against them accordingly. Trial was had and judgment was rendered in favor of plaintiff and against Thompson and Beach, but the trial court held that there was not sufficient evidence produced to show any liability on the part of Mrs. Prescott. Judgment was rendered in favor of Thompson on his cross-complaint against Beach alone. This appeal is by plaintiff from that portion of the judgment denying it any relief against Glenn R. Prescott.

The factual background shows that defendant Thompson and wife owned the Beacon Inn, near Cardiff. The sign company built, on his order, certain electric Neon signs and installed them upon the inn and leased these signs to Thompson under a 36-month lease at $111.50 per month. The latest agreement was dated October 20, 1952, and contained certain conditions showing that title to the signs always remained in the sign company; that upon default or sale of the premises all amounts became due and the owner could terminate all rights of the user to said signs; that all conditions thereof were binding on the assigns and the interest of the user would be transferable only upon the written consent of the owner. On September 4, 1953, the Thompsons entered into an escrow agreement, individually signed by all parties,

agreeing to sell to defendant Raymond B. Beach and Glenn Riley Prescott, as tenants in common, the Beacon Inn, and its fixtures and furniture, subject to certain deeds of trust and a chattel mortgage. Therein is a clause reciting:

"We, Thompson, will hand you Assignment of that certain Neon Sign Contract with the San Diego Neon Company, with an unpaid balance of $1500.00 no adjustment to be made; *tem* and conditions therein contained are hereby approved."

Immediate possession was to be given to defendants Beach and Prescott. It appears that defendants Prescott, and Beach as manager and operator, took over the inn about September 4, 1953. Thompson remained for about 30 days to acquaint Beach with its operation. Defendant Prescott returned to Arizona where she resided. She testified that she and Beach "entered into a partnership contemplating the purchase of the Beacon Inn" and that between September 4 and October 12, they were receiving profits and paying the current operating charges. Both defendants Beach and Mrs. Prescott, in accordance with the escrow agreement, on September 10, 1953, joined the seller in signing and publishing a notice of intention to sell and purchase the business under section 3440.1 of the Civil Code. Thereupon the sign company filed in escrow a statement of the amount claimed due under the lease. It then appears that on October 10th or 12th, 1953, defendant Prescott entered into an agreement with defendant Beach to sell her interest in the property to Beach and, according to the testimony of Beach and Mrs. Prescott, she "walked out" and was "out of the picture" and claimed that their purported partnership was then terminated. Thereafter Beach and Thompson ran the business. Beach subsequently sold it to a Mr. Mouzas, and operated it for him under lease until the Board of Trade took it over. During this period Mrs. Prescott and Beach signed amendments to the escrow agreement, including one dated September 9, 1953, authorizing the vesting of the property conveyed to Raymond B. Beach and Glenn Riley Prescott to show an undivided 16⅔ interest in Beach and 83⅓ interest in Prescott. On December 5, 1953, in accordance with their previous agreement, there was an amendment to the escrow agreement filed in the original escrow which was signed individually by defendants Beach, Thompson and Prescott, providing for a grant deed of Mrs. Prescott's interest in the property to Beach, assumption of certain obligations by Beach, and execution of a trust deed on the property in favor of defendant Mrs. Prescott, with interest thereon from October 12, 1953, the date of the

claimed dissolution of partnership. The escrow, showing title in Mouzas, was finally closed in June, 1954.

The pivotal question upon which plaintiff claims Mrs. Prescott is liable for the balance of the payments on the Neon Sign Agreement signed by Thompson, is based upon a certain printed, undated ''Assignment of Agreement'' in evidence, which recites in general that the assignor, James W. Thompson (who concededly signed it) assigns unto ''Raymond B. Beach & Glenn R. Prescott'' all of his rights as user under the contract of October 20, 1952. Therein the assignee agrees also to be liable for payments of sums due thereon, plus attorneys' fees. Under the undated acceptance clause of the assignee appears the typewritten names ''Raymond B. Beach & Glenn R. Prescott'' and the printed word ''By,'' followed by the signature of Raymond B. Beach. Then follows a paragraph signed by the sign company agent consenting to the assignment. As to each paragraph there is a printed space providing as follows: ''Dated _____, 194\_\_\_\_.'' All three separate agreements were undated.

It is conceded that defendant Prescott never did sign this Assignment Agreement. She testified that she knew nothing about it until she was sued as a party defendant in this action on or about April 15, 1955. She denied specifically and generally that defendant Beach was her partner at the time of its execution and claimed he had no authority to execute it in her behalf; and that she did not approve nor ratify his actions in so doing. It is the testimony of Beach that the sign company called him into its office; that the assignment had been typed by the sign company and its agent directed him to sign at the place indicated; that he ''signed it for himself'' and did not intend to bind her and ''figured she had to sign it too''; that he did not remember the date when he signed it but ''it must have been in September or October, 1953''; and that he could not remember whether he was then in partnership with Mrs. Prescott.

The president of the sign company testified he did not know the date when the assignment was executed and did not know the date when he received it back from the title company. There is a letter in evidence written by the sign company to the escrow company dated September 15, 1953, enclosing their claim for $3,083, or requesting a signed Assignment of Agreement by all parties as per forms enclosed. There is another letter from the sign company dated December 8, 1953, stating that it was reducing its claim by $223 and upon receipt

of said amount and the signed assignment it would release its claim in escrow.

It is the claim of the plaintiff that there was a partnership in existence at the time the assignment was signed; that Beach, as one of such partners, had the authority to sign for the partnership and to bind Mrs. Prescott under the assignment; that the partnership was not dissolved on October 12, but continued in existence until the close of the escrow; that if Beach was not so authorized, Mrs. Prescott was estopped to accept the benefits of the agreement without assuming the burdens; and that a quasi contract or ostensible agency arose by which she became bound by the agreement, citing such authority as sections 2300, 2307, 2310 and 2311 of the Civil Code; *Fairbanks* v. *Crump Irr. & Supply Co.*, 108 Cal.App. 197 [291 P. 629, 292 P.2d 529]; *Ralphs* v. *Hensler*, 97 Cal. 296 [32 P. 243]; *Corporation of America* v. *Harris*, 5 Cal.App. 2d 452 [43 P.2d 307]; *Gaine* v. *Austin*, 58 Cal.App.2d 250 [136 P.2d 584]; *Dreifus* v. *Marx*, 40 Cal.App.2d 461 [104 P.2d 1080]; and *Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489 [256 P.2d 32].

The trial court found generally in favor of Mrs. Prescott's contentions and specifically found that on October 12, 1953, Beach arranged to buy her interest in the partnership and that to accomplish this, further amended instructions were filed in the same escrow; that the partnership only extended to October 12, 1953; that Glenn R. Prescott never signed nor executed said agreement; that Beach executed it for himself alone and not as an authorized act of hers or the partnership; that she never ratified his conduct; that payments were made in September and October on the contract by checks signed "Beacon Inn, Raymond B. Beach," and no payments were subsequently made; and that plaintiff produced no sufficient evidence showing the contract was signed by Beach during the time he was a copartner with Mrs. Prescott, and consequently she is not personally liable to pay plaintiff anything under the lease agreement.

Further, it should be noted that in the closing of the escrow, an auditor submitted a report on the conduct of the business between September 4, 1953, and October 12, 1953, and apportioned the debts between Beach and Prescott for that period in the final settlement.

When a partnership is dissolved the authority of one partner to create a new obligation for the partnership is revoked and his agency for his copartner ends. (*Maryland*

*Cas. Co.* v. *Little,* 102 Cal.App. 205, 211 [282 P. 968].)
██ The evidence was sufficient to support the court's finding in this respect. (*Young* v. *Young Holdings Corp., Ltd.,* 27 Cal.App.2d 129 [80 P.2d 723].) ██ It is scarcely necessary to add that a judgment cannot be reversed on appeal merely because the preponderance of the evidence may appear to be on the side of one party or the other, but only when there is a total absence of competent evidence to sustain material findings. (*Corporation of America* v. *Harris,* 5 Cal. App.2d 452, 457 [43 P.2d 307].)

██ As to the claimed estoppel, the use of the signs for the short time between the date of the creation of the partnership and the date of its dissolution would not necessarily amount to an estoppel as a matter of law. No particular benefits were conferred upon Mrs. Prescott. The court found that the used signs had no trade-in value. Apparently Beach continued to use them for himself and while operating for the new owner, Mouzas. According to the evidence, the sign company endeavored to collect the amount due from them and never made any demand on Mrs. Prescott for the amount claimed due. On June 8, 1954, Thompson, through his attorney, demanded that Mouzas refrain from using his sign containing the name of "Thompson," which was in large letters, because it violated the agreement of sale. The sign company subsequently removed them on Mouzas' orders. Mouzas then ordered a new sign from the sign company.

It does not affirmatively appear that Mrs. Prescott had full knowledge of the assignment transaction and therefore, with such knowledge, she acted in such a manner that it might be unquestionably inferred that she acquiesced in the transaction and accordingly created a quasi contractual right in favor of the sign comany. It does not appear that an ostensible agency of Beach to sign the assignment for Mrs. Prescott arose. This was the only instrument in which it was claimed by anybody that he had such authority as her agent. In all other agreements, amendment to the escrow, and other transactions, the individual name of Mrs. Prescott was demanded and furnished.

██ It is a general rule of law that where a third person relies upon an ostensible agency, he must give evidence of similar transactions in which the act of the agent was authorized or recognized. (1 Cal.Jur. p. 742, § 42.)

The judgment in favor of defendant Prescott is affirmed.

Mussell, J., and Burch, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.