[Civ. No. 10488. Fourth Dist., Div. Two. June 17, 1971.]

FRANCIS A. STEARNS, Cross-complainant and Appellant, v.
TITLE INSURANCE AND TRUST COMPANY,
Cross-defendant and Respondent.

## COUNSEL

Hennigan, Butterwick & Clepper and J. D. Butterwick for Cross-complainant and Appellant.

Evelle J. Younger, Attorney General, Jay L. Shavelson, Assistant Attorney General, and N. Gregory Taylor, Deputy Attorney General, as Amici Curiae on behalf of Cross-complainant and Appellant.

William F. Hunter, Andrew S. Leerskov, Stanley T. Kandel, Helen V. Byard and Merle A. Herrod for Cross-defendant and Respondent.

## OPINION

**KAUFMAN, J.** — From an adverse judgment on his cross-complaint against Title Insurance and Trust Company (hereinafter Title Company), defendant Stearns (hereinafter appellant) appeals.

By California Land Title Association Standard Coverage policy number 255385 issued October 11, 1965, Title Company insured appellant's fee ownership of certain described property in the County of Riverside hereinafter referred to as Lot 11. The description of the property in the policy was derived from a notice to bidders from the State of California, Division of Highways supplied Title Company by appellant.

On or about May 24, 1966, appellant was named as defendant in an action by Corona Foothill Lemon Company (hereinafter Corona) which owned adjoining property hereinafter referred to as Lot 12. Corona's complaint did not on its face impugn appellant's title or right to possession of any portion of Lot 11. Rather, it alleged Corona's ownership of a specified portion of Lot 12 and charged that appellant had encroached thereon commencing on or about January 1, 1962, by constructing a road, fences and certain structures, which trespasses were continuing.

Upon being served with Corona's complaint, appellant notified Title Company and demanded defense of the action pursuant to the policy of title insurance.[1] Title Company declined to defend, and on June 24, 1966, appellant filed a cross-complaint in the action against Title Company for indemnification of any loss in the event of a judgment in favor of Corona

---

[1]The factual content of appellant's demand for defense was not introduced into evidence and is not part of the record on appeal.

and, additionally, its costs for defense of the action, including attorney fees. Although lacking in factual detail, the allegations of appellant's cross complaint against Title Company revealed appellant's contention that the property described in Corona's complaint was a portion of that insured by the policy.

At some point it became apparent that the conflicting claims of Corona and appellant resulted from a boundary dispute. A joint pretrial statement filed July 11, 1967 reads in pertinent part: "Essentially this is a boundary dispute. Plaintiff is the owner of Government Lot 12, . . . and defendant is the owner of the portion of Government Lot 11 lying Southwest of the Temescal Freeway. The defendant's property lies immediately West of plaintiff's property. The conflict is based on two differing versions of where the common line between these two government lots is located. Plaintiff bases its location of the government lots on the original United States Government Survey and the survey of A. C. Fulmor, on record in Book 5, Page 73, Records of Survey of Riverside County, and defendant's line is based on the original United States Government Survey and a survey of C. Gulley in Book 6, Page 3, Records of Survey."

In a nonjury trial, the court found that appellant had not encroached upon Corona's property, thereby resolving the boundary dispute in favor of appellant. It found, however, that the provisions of the policy of title insurance did not require Title Company to defend the action. Appellant contends that the latter finding is erroneous.

■ There was no conflicting extrinsic evidence as to the meaning of the policy, and the trial court found the terms and conditions of the policy constituted the complete agreement between the parties. Under these circumstances, the interpretation of the policy is essentially a judicial function, and an appellate court is called upon to make an independent interpretation. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

The policy provision containing the obligation to defend reads as follows: "The Company, at its own cost and without undue delay shall provide (1) for the defense of the Insured in all litigation consisting of actions or proceedings commenced against the Insured . . . ; or (2) for such action as may be appropriate to establish the title of the estate or interest . . . as insured, *which litigation or action in any of such events is founded upon an alleged defect, lien or encumbrance insured against by this policy. . . .*" (Italics supplied.)

The insuring clause insured appellant's ownership in fee against "[a]ny [existing] defect in or lien or encumbrance on the title to . . . the land

described . . ." except those "shown or referred to in Schedule B or excluded from coverage in Schedule B or in the Conditions and Stipulations. . . ."

Initially, Title Company relies upon both the insuring clause limiting coverage to a "defect in . . . the title to . . . the land described" and to an express exclusion[2] that reads: "This policy does not insure against loss or damage by reasons of the following: . . . . (c) Title to any property beyond the lines of the land expressly described. . . ." Title Company asserts that its duty to defend must be determined by comparing the allegations of Corona's complaint with the terms of the policy (e.g., *Blackfield* v. *Underwriters at Lloyd's, London,* 245 Cal. App.2d 271, 272 [53 Cal.Rptr. 838]); that Corona's complaint did not impugn appellant's title to Lot 11, nor even mention Lot 11, but, rather, asserted Corona's title to Lot 12 and charged appellant with encroachment thereon.

We agree that no potential liability under the policy appears from Corona's complaint. We do not agree, however, that the duty to defend is to be determined exclusively from the third party complaint or even all of the pleadings. "Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (*Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].)

Nevertheless, we have concluded that the trial court was correct in determining that there was no duty to defend. It is true that appellant's cross-complaint disclosed appellant's contention that the property described in Corona's complaint was a portion of the property insured by the policy, but no facts were alleged from which it could be inferred that, potentially, Corona's action was "founded upon an alleged defect . . . insured against" by the policy. Moreover, the joint pretrial statement, quoted above, discloses that at some time prior to its filing, all the parties knew that the dispute and conflicting claims arose out of a boundary dispute based upon conflicting surveys.

These being the facts, two policy provisions excluded coverage. An exclusion found in the Conditions and Stipulations reads: "This policy does not insure against loss or damage by reasons of the following: . . . . (d) Defects . . . known to the Insured . . . at the date of this policy

---

[2] A number of exclusions, including the one mentioned in the text above, appear in the Conditions and Stipulations under a heading in bold print, "EXCLUSIONS FROM THE COVERAGE OF THIS POLICY."

. . . and not shown by the public records. . . ." Additionally, a portion of Schedule B reads: "This policy does not insure against loss or damage by reason of the following: . . . . (4) Discrepancies, conflicts in boundary lines, shortages in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records."

If the policy excluded all claims resulting from defects known to the insured, the case would be at an end, for the evidence established, and the court found, that appellant knew of the uncertainty in the common boundary between Lots 11 and 12 in 1958, some seven years prior to issuance of the policy on October 11, 1965. The exclusion, however, relates only to defects known to the insured "and not shown by the public records."

Similarly, if Schedule B eliminated coverage for all "[d]iscrepancies, conflicts in boundary lines, shortages in area, encroachments or any other facts which a correct survey would disclose," the case would be at an end, for Corona's claim was clearly based on discrepancies or conflicts in boundary lines and claimed encroachments that a correct survey would have resolved. Schedule B, however, only eliminates coverage as to such items "which a correct survey would disclose, and which are not shown by the public records."

The question is, therefore, whether the discrepancy or conflict in the common boundary line between Lots 11 and 12 was shown or disclosed by the "public records," as that term is defined by the policy.

Section 8, Township 4 South, Range 6 West, San Bernardino Base Meridian, in which Lots 11 and 12 are situated, has been the subject of a considerable amount of surveying over the years, beginning with an Official United States Government Survey in 1874 by John Goldsworthy, approved by the Surveyor General's Office, November 2, 1874. Subsequent surveys were performed by A. C. Fulmor in 1918 and 1919 and C. Gully in 1920. Appellant contends that the plat and field notes of the Official Government Survey were on record in the General Land Office of the Department of Interior as well as federal offices in San Francisco and Los Angeles; that records of the surveys made by Fulmor and Gully were recorded in the recorder's office of Riverside County; that these records when compared disclosed the discrepancy or conflict in the boundary line between Lots 11 and 12;[3] and that, therefore, such discrepancy or conflict

---

[3]The court made a finding that in 1958 Corona and appellant were uncertain and in doubt as to the location of the true boundary "by reason of difference in the location of said common boundary line and other boundary lines in said Section 8 between" the records of survey of Fulmor and Gully. Therefore, if Title Company

was shown or disclosed by the "public records" within the meaning of the policy.

Title Company, however, again relies on the policy. In the Conditions and Stipulations under a heading in bold print "DEFINITIONS OF TERMS," appears the following: ". . . . (b) 'Public Records': those records which impart constructive notice of matters relating to said land; . . . ." We entertain no doubt that the Official Government Survey and the recorded records of survey of Fulmor and Gully constitute public records. (*Saunders* v. *Polich,* 250 Cal.App.2d 136, 140 [58 Cal.Rptr. 198].) In view of the definition in the policy, however, the question is whether they are such public records as impart constructive notice. We hold they are not.

 "[T]he mere fact that an instrument has been recorded does not give constructive notice thereof unless there is some statute authorizing or permitting such instrument to be placed of record and at the same time making the effect of such recording constructive notice." (*Dreifus* v. *Marx,* 40 Cal.App.2d 461, 465-466 [104 P.2d 1080].) Numerous portions of the recording statutes specify the effect of constructive notice. (E.g., Civ. Code, §§ 1213, 1215 and 1219; Gov. Code, § 27282.) Private records of survey such as the Gully and Fulmor surveys are recorded, however, pursuant to Business and Professions Code section 8762 et seq. These sections contain no provision that such recordation shall impart constructive notice. The recordation of United States Government Surveys by the Department of Interior is provided for by section 751 of title 43 of the United States Code. The statute, however, does not provide for constructive notice.

 The suggestion made at oral argument that a record of survey is a "conveyance" as that term is used in Civil Code section 1213, which provides for constructive notice, is not meritorious. The term "conveyance" is defined in Civil Code section 1215 as embracing "every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title to any real property may be affected, except wills." A record of survey is not an "instrument" within the meaning of Civil Code section 1215. (Cf. *Hoag* v. *Howard,* 55 Cal. 564, 566.) Furthermore, to impart constructive notice a "conveyance" must be within the chain of title. (*Bothin* v. *California Title Ins. Co.,* 153 Cal. 718, 724 [96 P. 500]; Ogden's Cal. Real Property Law (1956) p. 236.)

 Appellant seeks to avoid the indicated result by resort to the

was charged with constructive notice of these two records of survey, it must be inferred that the discrepancy or conflict was "shown" or "disclosed" by them.

rule that, if there is any uncertainty, the coverage of an insurance policy must be interpreted to include coverage the public may reasonably expect. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 270-271; *Mutual B.-L. Assn.* v. *Security T. I. & G. Co.,* 14 Cal.App.2d 225, 229, 232 [57 P.2d 1392].)

We fully recognize the cited rule, but it has no applicability to the case at bench. Unlike the *Gray* and *Mutual* cases, we find no ambiguity in the policy in the case at bench pertinent to the questions here involved. Unlike *Gray* (65 Cal.2d at pp. 272-273), in the case at bench the agreement to defend is by its own terms limited to litigations or actions "founded upon an alleged defect . . . insured against by the policy." While the term "defect in . . . the title to . . . the land described" in the insuring clause is undefined and might otherwise be susceptible to construction to cover an attack on the right to possession based on a boundary line dispute, the policy clearly and unambiguously excludes coverage as to defects known to the insured and not disclosed by the public records as well as loss or damage by reason of discrepancies, conflicts in boundary lines or other facts which a correct survey would disclose and which are not shown by the public records. The term "public records" is, in turn, unambiguously defined as those records which impart constructive notice. ■ While ambiguities and uncertainties in an insurance policy will be resolved adversely to the insurer, some relevant ambiguity or uncertainty must be present before the rule comes into play. (*Wetzler* v. *State Farm Mut. Auto. Ins. Co.,* 246 Cal.App.2d 472, 476 [54 Cal.Rptr. 756].)

■ Moreover, much of the reasoning supporting such decisions as *Gray* is inapplicable to the situation presented by the case at bench. In the first place, it is doubtful whether appellant could have had a reasonable expectation of defense by Title Company of a boundary dispute known to him some seven years prior to issuance of the policy and not disclosed by him to Title Company. Secondly, there is no evidence of the factors generally found supporting a court's resort to the principles relating to adhesion contracts. (See *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 269-271.) Appellant purchased a standard coverage policy. There is no evidence that this coverage was offered to him on a "take or leave it" basis. At additional cost he could have purchased a policy affording extended coverage insuring against risks such as those involved in Corona's claim. (See Cal. Real Estate Sales Transactions (Cont.Ed.Bar, 1967), §§ 8.7, 8.8, 17.13 and 17.17.) The purchase of such extended coverage would have necessitated his obtaining a correct survey, however (see Cal. Real Estate Sales Transactions, *supra,* § 17.17; Ogden's

Cal. Real Property Law, *supra,* p. 935), and the boundary dispute would in all likelihood have become known to the insurer.

Affirmed.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied July 8, 1971, and appellant's petition for a hearing by the Supreme Court was denied August 18, 1971.