[Civ. No. 1808. Fifth Dist. July 8, 1974.]

EDGARDO CONTINI et al., Plaintiffs and Appellants, v.
WESTERN TITLE INSURANCE COMPANY et al.,
Defendants and Respondents.

## Counsel

Linneman, Burgess, Telles & Van Atta and James E. Linneman for Plaintiffs and Appellants.

Docker & Docker and Michael A. Milnes for Defendants and Respondents.

## Opinion

**GARGANO, J.**—Appellants brought this action in the court below against Western Title Insurance Company and Madera County Title Company to recover damages caused by an alleged defect in the title to the land they purchased in 1964 from Johnny and Mary Dell Jones; their complaint, in

six causes of action, was based on breach of contract and negligence. After jury trial, the jury returned a verdict in favor of appellants against both respondents in the amount of $22,000. Respondents then moved for a judgment notwithstanding the verdict, and the motion was granted. Appellants have appealed from the judgment.

In 1948 an action entitled Milton H. Parker et al. v. John H. Bird et al. was commenced in the Superior Court of Madera County to quiet title to certain lands located in the Coarsegold area of the county; a notice of lis pendens was recorded in connection with the litigation stating that the object of the lawsuit was to determine the true location of the boundary lines of the various parcels described in the notice. At that time, the land now in question was owned by John Bird and was one of the parcels involved in the lawsuit and described in the lis pendens.

On May 10, 1950, a judgment was entered in the superior court action determining, among other things, that the location of the western boundary of the John Bird parcel was east of Coarsegold Creek; the judgment was not recorded. Bird sold the land to Johnny and Mary Dell Jones in 1961, and while a title insurance policy was issued to the Joneses by the Security Title Insurance Company, the policy did not mention the lis pendens or the unrecorded judgment.

In early 1964, Walter Machock, a real estate broker from Madera, showed the Joneses' property to Edgardo Contini; Machock told Contini that the western boundary line of the land was west of Coarsegold Creek and that the parcel contained 435 acres; Contini agreed to purchase the property from Johnny and Mary Dell Jones for $82,000. In the deposit receipt signed by the Continis, it was stated that appellants would make a $15,000 down payment and sign a promissory note for the balance of the purchase price, payable at the rate of $5,000 or more per annum; the note was to be secured by a purchase money mortgage. It also was stated that "[e]vidence of title shall be a California Land Title Association standard form Policy of Title Insurance issued by Western Title Insurance Company . . . ."

On February 20, 1964, an escrow was opened with the Madera County Title Company; the buyers' instructions authorized the title company to deliver the $15,000 down payment and the promissory note and deed of trust to the Joneses when it received a deed to the property and obtained a standard title insurance policy for the Continis.[1] The Madera County Title Company then prepared an abstract of title for the Western Title

---

[1]See Appendix for pertinent conditions contained in the buyers' instructions.

Insurance Company and a preliminary title report which it sent to the Crocker-Citizens National Bank. In both instances the title company relied upon the policy of title insurance issued by the Security Title Insurance Company in 1961 to the Joneses and did not mention the lis pendens recorded in 1948 or the unrecorded judgment entered in 1950. As a consequence, neither the lis pendens nor the unrecorded judgment was referred to in the title insurance policy issued by the Western Title Insurance Company to the Continis. The escrow closed on April 10, 1964.

In 1965, Edgardo Contini engaged a civil engineer to ascertain the cost of surveying his land and to prepare a map delineating the boundaries so that Contini could determine the terrain of the property in relation to a public highway located in the southeast corner. In December of that year the engineer wrote a letter to Contini estimating the cost of the survey and mentioning the court decree; he also enclosed a map showing that the decree had affected the western boundary of the northwestern portion of the property. Because the cost of the survey was high, Contini did nothing in response to this information.

In 1967, Contini hired a surveyor to locate the southern boundary of the property; when the surveyor discovered that there was a problem with the western boundary, he recommended that Contini seek legal advice. In October of that year Contini engaged an attorney from Beverly Hills who, after an exchange of correspondence with the Western Title Insurance Company, advised his client to employ local counsel.

On February 27, 1969, appellants filed this action for damages asserting that the court judgment placing the western boundary of the property east of the Coarsegold Creek had depreciated the value of the parcel for recreational purposes and reduced the acreage by 35 acres; Contini testified that on the basis of the boundaries fixed by the judgment, the parcel was worth only $60,000 at the time he purchased it; he said that he paid $82,000 because he was told that the western boundary line was west of the creek and because the tax receipts he observed indicated that the parcel contained 435 acres; a civil engineer testified that in 1947 a man by the name of Price made a survey of the western boundary and placed it west of Coarsegold Creek. The engineer stated that the Price map was on file in Madera County.

THE APPEAL AGAINST THE WESTERN TITLE INSURANCE COMPANY

Appellants' appeal against the Western Title Insurance Company is predicated on the proposition that there was sufficient evidence for the

jury to find that this respondent breached its insurance contract with appellants. Appellants argue that the clause in the insurance policy protecting the insureds against loss caused by "[a]ny defect in or lien or encumbrance on the title . . ." with the exception of "[a]ny facts, rights, interests, or claims which are not shown by the public records . . ." insured appellants against any defect shown by the public records. Appellants also argue that since the policy contained a clause *excluding* losses because of "[d]iscrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records," by necessity the policy insured against discrepancies, conflicts in boundary lines and shortages in area disclosed by the public records. In short, it is appellants' position that the notice of lis pendens recorded in connection with the Parker-Bird lawsuit gave constructive notice of the judgment entered in that case even though the judgment was not recorded and that the judgment created a conflict in the western boundary line of appellants' property which was discernible from the public records, apparently because the location of the boundaries as determined by the judgment was inconsistent with the county tax receipts Mr. Contini observed before he purchased the property and with the Price survey.

■ The purpose of a lis pendens is to give constructive notice of pending litigation affecting real property (Code Civ. Proc., § 409; *Brandolino v. Lindsay*, 269 Cal.App.2d 319, 325 [75 Cal.Rptr. 56]), and this purpose is accomplished once the litigation terminates; arguably, only a recorded judgment, not a pre-existing lis pendens, imparts notice of the judgment's contents. (Gov. Code, §§ 27280, 27326; *Garcia v. Pinhero,* 22 Cal.App.2d 194, 197 [70 P.2d 675]; but cf. *Ahmanson Bank & Trust Co. v. Tepper,* 269 Cal.App.2d 333, 342 [74 Cal.Rptr. 774]; *Rose v. Knapp,* 153 Cal. App.2d 379, 386 [314 P.2d 812].) If this is true, the unrecorded judgment was not part of the public records within the ambit of the Western Title Insurance Company policy because the term "public records" was defined to mean "those records which impart constructive notice of matters relating to" the property described in the policy. (See *Stearns v. Title Ins. & Trust Co.,* 18 Cal.App.3d 162, 169 [95 Cal.Rptr. 682].)

■ We do not find it necessary to reach this question. The land purchased by appellants was not described in the preliminary title report or in the escrow instructions or in the title insurance policy by metes and bounds, nor was the acreage specified in any of those instruments;[2] the land was

[2]See Appendix for a description of the property and for a nonscale diagram.

described by fractions of sections and government lots, and a government lot necessarily does not contain a standard number of acres.[3] Furthermore, the land described in the policy issued by the Western Title Insurance Company was not affected by the unrecorded judgment entered in the Parker-Bird litigation; the judgment did not affect appellants' title or their right of possession to the land encompassed in the area actually described in the policy; nor did it change the description or create discrepancies discernible from the "public records" as the term was defined in the policy, since neither the tax receipts nor the Price survey imparted "constructive notice of matters relating to" the property. (*Stearns* v. *Title Ins. & Trust Co., supra,* 18 Cal.App.3d 162, 169.[4]

■ It is settled that a standard policy of title insurance is a contract of indemnity which only insures against defects, discrepancies or other impediments of record affecting the title or interfering with the right of possession of the land described in the policy. The insured is not protected from matters dependent upon a survey or a critical inspection of the property unless the policy provides for extended coverage or the insured requests special endorsements.[5] (*King* v. *Stanley,* 32 Cal.2d 584, 590 [197 P.2d 321]; 2 Miller & Starr, Current Law of Cal. Real Estate, Title Insurance and Escrows, §§ 202, 223, pp. 261, 282.) As Mr. Witkin puts it, "[f]or a premium of about double the usual sum, the company makes a survey and inspection, and the policy covers a great many of such off-record defects as would thereby be discovered." (3 Witkin, Summary of Cal. Law (8th ed.) Real Property, § 168, p. 1906; see Cal. Real Estate Sales Transactions (Cont. Ed. Bar) § 17.17, p. 620.)

■ What appellants are arguing is that the Western Title Insurance Company's policy of title insurance, although a standard policy of title

---

[3]In government surveys, the survey commences at the southeast corner of the township and proceeds in a westerly and northerly direction, and loss of acreage due to inascertainable errors are placed in the quarter sections bordering the western and northern boundaries of the township. It is for this reason that geographical divisions which would otherwise qualify as quarter-quarter sections are referred to as government lots. (43 U.S.C.A. § 751; Cal. Real Estate Sales Transactions (Cont.Ed.Bar) § 8.12 et seq., p. 289.)

[4]In this case, no evidence was presented that the Price survey was filed with the county recorder pursuant to section 8762 of the Business and Professions Code and recorded pursuant to section 27320 of the Government Code. In any event, the case of *Stearns* v. *Title Ins. & Trust Co., supra,* 18 Cal.App.3d 162, 169, holds that a record of survey does not impart constructive notice even if it is recorded pursuant to section 27320 of the Government Code.

[5]The policy issued by Western Title Insurance Company did not provide for extended coverage. On the contrary, the policy executed excluded "[d]iscrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records."

insurance, protected appellants against the loss of acreage Edgardo Contini thought he was getting even though he admitted knowing the land he was buying had three government lots and the significance of the designation "government lot." What appellants are seeking from the Western Title Insurance Company policy is extended coverage without having requested that type of coverage and without having paid the additional premium. The court properly granted respondent Western Title Insurance Company's motion for judgment notwithstanding the verdict.

### THE APPEAL AGAINST THE MADERA COUNTY TITLE COMPANY

Appellants' arguments for reversal of the judgment in favor of the Madera County Title Company may be summarized briefly. Appellants allege that the title company as escrow holder agreed to search the title to the land appellants were purchasing and impliedly agreed to exercise reasonable care in making the search and in reporting the state of the title. They maintain that the company was negligent in making the search and misrepresented the state of the title. Appellants maintain, also, that because the title company's liability was founded on the written escrow instructions, the four-year statute of limitations was applicable; they rely on *Amen* v. *Merced County Title Co.,* 58 Cal.2d 528, 532, 534 [25 Cal.Rptr. 65, 375 P.2d 33], for the rule that when a cause of action against a title company is based on the breach of written escrow instructions, the four-year statute of limitations applies and the statutory period does not commence to run until the injured party knows or should know the facts which constitute the escrow holder's breach of duty.

Respondent, on the other hand, argues that it did not make the title search as an escrow holder but in the capacity of an abstractor of title on behalf of the Western Title Insurance Company. It also argues that any negligence which may have occurred in searching the records and in reporting the state of the title was not the proximate cause of appellants' loss because there was no evidence that Mr. Contini relied on the abstract of title or on the preliminary title report which was delivered to the Crocker-Citizens National Bank. Respondents insist that any cause of action appellants may have had against the title company as an abstractor of title was barred by the two-year statute of limitations articulated in subdivision 1 of section 339 of the Code of Civil Procedure. This subdivision provides that the following actions must be commenced within two years: "An action upon a contract, obligation or liability not founded upon an instrument of writing, other than that mentioned in subdivision 2 of Section 337 of this code; or an action founded upon a contract, obligation or liability, evi-

denced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."

There was substantial evidence for the jury to find that the Madera County Title Company agreed to make a title search on behalf of appellants and to report the state of the title accurately in the abstract of title it prepared for the Western Title Insurance Company and for its own use as escrow holder. Mr. Contini testified that he asked respondent to make a ". . . title search and give [him] the necessary protection that is normal in real estate transactions"; the manager of the title company admitted that the title search was commenced upon receipt of the escrow instructions, and his testimony indicates that he knew that Contini expected his company "to check the records" and that the client was looking to the company for protection; it was respondent's duty as escrow holder to make certain that the title insurance policy it obtained from the Western Title Insurance Company complied with the escrow instructions, and it needed an abstract of title to perform this duty.

There was also substantial evidence for the jury to find that respondent was negligent in searching the public records and in reporting the state of the title in the abstract of title. If the Madera County Title Company had searched the public records diligently, instead of relying on the title insurance policy issued by the Security Title Insurance Company to the Joneses in 1961, it would have discovered the notice of lis pendens recorded in 1948, and because a lis pendens gives constructive notice of pending litigation, respondent, an experienced abstractor of title, would have known immediately that a lawsuit affecting the property appellants were buying had been instituted in that year; for all respondent would have known, the litigation still could have been pending in 1964, and it would have been relatively simple for the experienced title company to ascertain what happened in the lawsuit and to make a report in the abstract of title it prepared.

■ An abstractor of title is hired because of his professional skill, and when searching the public records on behalf of a client he must use the degree of care commensurate with that professional skill (*Lattin* v. *Gillette*, 95 Cal. 317, 320 [30 P. 545]; *Viotti* v. *Giomi*, 230 Cal.App.2d 730, 739 [41 Cal.Rptr. 345]); unlike a title insurer who can define the extent of his liability under the insurance policy, the abstractor must report all matters

which could affect his client's interests and which are readily discoverable from those public records ordinarily examined when a reasonably diligent title search is made. It is this kind of protection that a person is entitled to expect from a skilled abstractor of title and which appellants did not receive in this case.

██ Lastly, the evidence supports the jury's implied finding that the title company's negligence was the proximate cause of appellants' loss. While there may be some question as to whether the unrecorded judgment entered in the Parker-Bird lawsuit was binding on appellants, respondent does not challenge the accuracy of the location of the boundaries of appellants' lands as determined by that judgment. ██ ██ ██ It is reasonable to assume that if the lis pendens and the judgment entered in the Parker-Bird lawsuit had been mentioned in the abstract of title, they also would have been referred to in the Western Title Insurance Company's policy and undoubtedly would have been excluded from the insurance coverage; the policy stated that a portion of the fee charged was for a title search, and it stretches the imagination to believe that a reputable and prudent insurer of title which has charged for a title search, thereby subjecting itself to liability as an abstractor of title, deliberately would fail to mention a lis pendens and an unrecorded judgment purporting to determine the precise location of the boundaries of the insured property.[6] (See 2 Miller & Starr, Current Law of Cal. Real Estate, Title Insurance and Escrows, § 222, p. 281.) ██ It seems clear to us that if the policy had referred to the lis pendens and the unrecorded judgment and then excluded those items from the insurance coverage, the escrow would not have closed because the policy would not have conformed with the escrow instructions.[7]

Also, the manager of the Madera County Title Company was chargeable with knowledge that the policy his company was obtaining from the Western Title Insurance Company did not provide for extended coverage. He knew that Contini expected the title company "to check the records"

[6]When a title insurance policy represents that a title search was made, it impliedly represents that the defects, impediments and other matters mentioned in the policy and excluded from coverage are the only ones disclosed by a search of the public records; to the average layman who has paid for a title search made in connection with a policy of title insurance, the policy itself serves as an abstract of title. For a good discussion of a title insurer's liability as an abstractor of title, see *Banville* v. *Schmidt*, 37 Cal. App.3d 92, 100-108 [112 Cal.Rptr. 126].

Arguably, the Western Title Insurance Company also was liable for appellants' loss as an abstractor of title under the rationale of the *Banville* decision. This theory was not raised or briefed in this appeal and we do not reach it.

[7]See footnote 1, *ante*.

and that the client was looking to the company for protection. Had the judgment appeared in the abstract of title but not in the insurance policy, respondent, as escrow holder, would have been under a duty to call the judgment to Contini's attention. ■ An escrow holder is a fiduciary and like any other fiduciary is under a duty to communicate to his principal knowledge acquired in the course of his agency with respect to material facts which might affect the principal's decision as to a pending transaction, particularly where, as here, he knows that the principal is looking to him for protection as to those very facts of which he has knowledge. (*Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 528, 534; see *Cecka* v. *Beckman & Co.,* 28 Cal.App.3d 5, 11 [104 Cal.Rptr. 374]; *Spaziani* v. *Millar,* 215 Cal.App.2d 667, 684 [30 Cal.Rptr. 658]; Civ. Code, § 2020.)

■ Turning to the statute of limitations, we agree with respondent's contention that the two-year statute was applicable. First, the negligence which caused appellants' loss did not occur during the performance of a duty ordinarily performed by an escrow holder, nor did it occur in the performance of an obligation imposed upon respondent by the written escrow instructions. On the contrary, it is very clear that the Madera County Title Company was acting in a dual capacity, and that the actionable negligence took place while the company was functioning as an abstractor of title; as escrow holder, respondent was obligated to procure an abstract of title, but the services performed in that connection were performed by the respondent company as a skilled abstractor, not as an escrow holder. An escrow is a limited agency, and the obligations of the escrow holder to each party are strictly in accordance with the instructions given by that party. (*Blackburn* v. *McCoy,* 1 Cal.App.2d 648, 654-655 [37 P.2d 153].)

Second, the legislative history of subdivision 1 of section 339 of the Code of Civil Procedure demonstrates that the two-year statute applies to any obligation or liability evidenced by a certificate or abstract of title even though the liability is founded on a written contract. In the early case of *Lattin* v. *Gillette, supra,* 95 Cal. 317, the plaintiff engaged the defendant to search the public records, and his action for damages was instituted more than two years after the written title report was delivered to the plaintiff. The Supreme Court rejected plaintiff's contention that the defendant's liability was based on the written report and that the four-year statute of limitations was applicable. The court held that because defendant had been engaged under an oral contract, the two-year statute of limitations was applicable and the cause of action commenced to run on the breach of the oral contract, when the report was delivered, not when the loss was discovered. To eliminate the potentially harsh results of the high court's

decision, the Legislature amended section 339 to provide that when liability is evidenced by an abstract or certificate of title or a policy of title insurance, the two-year statute applies but that the statutory period does not commence to run until the loss or damage suffered by the aggrieved party is discovered. The nature of the contract upon which the liability arises is no longer a critical factor; otherwise, there would be two statutes of limitation covering causes of action of the kind involved in this case.[8]

We consider next the crucial question as to whether the evidence shows, as a matter of law, that Edgardo Contini had knowledge of the nature and extent of his damage in 1965, while bearing in mind that subdivision 1 of section 339 of the Code of Civil Procedure ". . . refers to discovery, not to the date when discovery would have been possible." (*Hansen* v. *Western Title Ins. Co.,* 220 Cal.App.2d 531, 538 [33 Cal.Rptr. 668, 98 A.L.R.2d 520]; see *J. H. Trisdale, Inc.* v. *Shasta etc. Title Co.,* 146 Cal. App.2d 831, 839 [304 P.2d 832].)

The evidence that Mr. Contini knew in December 1965 that the judgment entered in the Parker-Bird litigation had affected the boundaries of his property substantially and that he knew or must have known the nature and possible extent of his loss is persuasive. Nevertheless, the jurors were instructed on the statute of limitations properly, and their verdict on this issue was binding on the trial judge and is binding upon us in this appeal. The letter the engineer wrote in 1965 is not a model of clarity. Albeit it mentioned a "court decree," it did not state unequivocally that the decree affected the western boundary of the property except possibly in section 19; the letter also stated that the engineer did not have a copy of the decree in his possession and suggested that a determination of the exact location of the western boundary line of the property in section 19 could not be made until a copy was obtained and the land was surveyed. Moreover, Mr. Contini testified that he did not know that the decree had affected the western boundary in that part of his property which was located in section 30; he indicated that the real value of the property was in section 30, and that although he knew that the judgment had somehow affected the northern portion of the western boundary, he was not concerned with that area. Finally, Contini's testimony that he did not know the nature or extent of his loss was corroborated by the fact that he did nothing to protect his interests until 1967 when he was told by the surveyor he hired to survey the southern boundary of the property that the decree had a substantial

---

[8]Appellants' reliance on *Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 528, is misplaced. The liability resulting from the breach of the escrow condition involved in that case was not concerned with a title search and was not evidenced by an abstract or certificate of title as is true in this case.

effect on the western boundary in section 30; it is significant that Contini hired the engineer to make a survey of the southern boundary so that a land exchange in the southern portion of the property could be consummated with a neighbor and that when he was told of the problem concerning the western boundary he acted promptly.

In granting a defendant's motion for judgment notwithstanding a jury verdict, the trial court may not weigh the evidence, and on appeal we must read the record in the light most favorable to the plaintiff, after resolving all conflicts in his favor and giving him the benefit of all reasonable inferences in support of the verdict. As the Supreme Court directed in *Quintal* v. *Laurel Grove Hospital*, 62 Cal.2d 154, 159 [41 Cal.Rptr. 577, 397 P.2d 161]: "Such a motion may be granted, properly, only when, disregarding the conflicting evidence, and indulging in every legitimate inference in favor of the plaintiff, the result is a determination that there is no evidence of substantial nature to support the verdict. The trial court, on such motion, is not permitted to weigh the evidence, and on an appeal from the judgment entered on the granting of such a motion, the appellate court must read the record in the light most advantageous to the plaintiff, resolve all conflicts in his favor, and give him the benefit of all reasonable inferences in support of the judgment."

The judgment in favor of the Western Title Insurance Company is affirmed. The judgment in favor of Madera County Title Company is reversed with directions to the trial court to enter judgment on the jury's verdict in favor of appellants against that respondent.

Brown (G. A.), P. J., and Franson, J., concurred.

The petition of respondent Madera County Title Company for a hearing by the Supreme Court was denied September 5, 1974.

---

APPENDIX

In pertinent part, the buyers' instructions provide:

". . . you are authorized to deliver and/or disburse as hereinafter set forth, together with any additional funds, including the proceeds of any loan deposited with you, when you can issue your standard form title insurance policy in the amount of $82,000.00, insuring title to the property described in your above numbered report or on the back hereof to be vested in:

EDGARDO CONTINI, a married man, as community property covering real property described on attached sheet as Exhibit "A";

Subject to:

1. The usual printed exceptions and stipulations contained in said policy, and

2. Taxes that are not delinquent.
3. Assessments of any Improvement or Reclamation District, provided there are no delinquent installments thereof.
4. Covenants, conditions, restrictions and reservations of record.
5. Existing rights of way or easements.
6. Purchase money Deed of Trust in the amount of $67,000.00 . . . ."

East ½ of northwest ¼, east ½ of southwest ¼, and government lot 4, section 19, township 8 south, range 21 east, Mount Diablo base and meridian. East ½ of northwest ¼, northwest ¼ of northeast ¼, southwest ¼ of northeast ¼, and government lots 1 and 2, section 30, township 8 south, range 21 east, Mount Diablo base and meridian.
EXCEPTING FROM the southwest ¼ of northeast ¼, section 30, approximately 5 acres in the southeast corner.