In re Sally A. EHMKE, Debtor.

Willie R. CARROLL, Plaintiff,

v.

Ralph O. BOLDT, Trustee, Defendant.

Bankruptcy No. 79–02431–M.

United States Bankruptcy Court,
S. D. California.

May 23, 1980.

Thomas Murphy, Linley, McDougal, Meloche & Murphy, El Cajon, Cal., for plaintiff.

Richard A. Peterson, San Diego, Cal., for Ralph O. Boldt, Trustee.

George Corn, San Diego, Cal., for bankrupt.

## MEMORANDUM OPINION REGARDING CLAIM OF HOMESTEAD

JAMES W. MEYERS, Bankruptcy Judge.

### I

This matter involves a dispute over whether certain proceeds from the sale of a house are subject to a purported homestead asserted by the bankrupt herein, Ms. Sally A. Ehmke ("bankrupt"). The trustee, Ralph O. Boldt has objected to the bankrupt's claim of the homestead, and has been joined in this regard by Mr. Willie R. Carroll, who claims to be a judgment creditor of the bankrupt.

After receiving memoranda on the legal issues confronting the Court, and, after hearing testimony on the factual background of this controversy, the Court has concluded that the bankrupt perfected a valid homestead which now covers the proceeds from the sale of the homestead property. Accordingly, the proceeds are exempt from administration as part of the bankrupt's estate and are shielded from the claim asserted by Carroll.

## II

### FACTS

On January 1, 1979, Carroll instituted a civil action against the bankrupt in state court seeking to have a constructive trust imposed upon certain realty then owned by the bankrupt. Five days later, on January 10, 1979, an Interlocutory Judgment of Dissolution of Marriage was entered in state court in an action for the dissolution of the Ehmke marriage previously commenced by Mr. Ehmke.

On January 15, 1979, Carroll filed a notice of pending action, or lis pendens, in connection with his state court action against the bankrupt. Thereafter, on January 23, 1979, the bankrupt recorded a declaration of homestead covering the residence involved in the suit brought by Carroll. In her declaration of homestead, the bankrupt claimed a homestead as an unmarried head of a family consisting of herself and her daughter, Tamara, who had been residing with the bankrupt, with her father's consent, since October of 1978.

In the course of Carroll's state court action, the parties reached an accord on May 11, 1979, whereby the lis pendens was to be removed. It was further stipulated to by all that the net proceeds derived from the contemplated sale of the bankrupt's residence would be placed in a trust account pending the outcome of the trial.

On August 8, 1979, Carroll's suit against the bankrupt was concluded and the trial court orally rendered a judgment in favor of Carroll in the amount of $15,000 plus interest and costs of suit. This prompted the bankrupt to file her petition with this Court on August 30, 1979.

In the bankrupt's petition she claimed as exempt property, *inter alia*, the proceeds from the sale of her homestead residence. She initially grounded her homestead claim on former Section 690.235(e) of the Code of Civil Procedure. *See* Cal.Civ.Proc.Code § 690.235(e) (West) (repealed). The bankrupt later amended her claim of exempt property to include Section 690.31 of the Code of Civil Procedure as well as Sections 1260.3, 1261 and 1265 of the Civil Code. *See* Cal.Civ.Proc.Code § 690.31 (West) (dwelling house exemption); Cal.Civ.Code §§ 1260, subd. 3, 1261, 1265 (West) (homestead).[1] The trustee, however, did not agree and refused in his Report of Exempt Property to recognize that the bankrupt had perfected any homestead rights. In turn, the bankrupt filed a timely objection to the trustee's Report of Exempt Property.

Thereafter, on October 24, 1979, Carroll, in an attempt to collect on his state court judgment, filed his original complaint to obtain relief from the automatic stays afforded the bankrupt by the Bankruptcy Rules of Procedure. *See* Bankruptcy Rules 401, 601.[2] In doing so, Carroll has essentially aligned himself with the trustee in seeking to deny the availability of any homestead to the bankrupt.

## III

### DISCUSSION

#### A. *THE BANKRUPT'S DECLARATION OF HOMESTEAD*

The trustee bases his refusal to acknowledge the bankrupt's homestead exemption on his claim that the bankrupt filed an "incorrect" declaration of homestead by stating that she was both "unmarried" and the "head of a family".

1. The bankrupt framed her declaration of homestead as if she were an "unmarried head of a family". In her amended petition, however, she claims to have selected a homestead for a person other than the head of a family. *See* Cal.Civ.Code § 1260, subd. 3 (West). This discrepancy is not controlling though, as her declaration of homestead would be sufficient to perfect *either* type, and the amount of the homestead claimed is not in issue. *Compare* Cal.Civ.Code § 1263 (West) *with* Cal.Civ.Code

§ 1267 (West). The Court would also note that the parties have not addressed the applicability of Section 690.31 of the Code of Civil Procedure to this case. It would appear, however, to be inapplicable here. *See* Cal.Civ.Proc.Code § 690.31(b)(1) (West).

2. Carroll later filed an amended complaint for the same purpose on November 30, 1979, the changes in which are insubstantial.

The bankrupt, on the other hand, contends that she was "unmarried" at the time she executed her homestead declaration. In support of this assertion, she relies on the theory that a spouse who attempts to perfect a homestead while subject to an interlocutory judgment of dissolution is considered to be a "single person" for homestead purposes. *See e. g., McGaffey v. Sudowitz,* 189 Cal.App.2d 215, 218–22, 10 Cal. Rptr. 862 (1961).

The bankrupt also points out that she was in fact the "head of a family" within the meaning of Section 1261 of the Civil Code at the time her declaration was filed. This is so, she claims, because her daughter Tamara then resided with her under her care and maintenance. In this regard, Section 1261 of the Civil Code provides in part that: "[t]he phrase 'head of a family', as used in this title, includes within its meaning . . . Every person who has residing on the premises with him or her, and under his or her care or maintenance, either: (a) His or her minor child . . . ." Cal.Civ.Code § 1261, subd. 2 (West).

In further opposition to the bankrupt, Carroll adopts the trustee's theme by first arguing that the bankrupt "falsely" stated she was unmarried when she filed her declaration. This conclusion, it is urged, is supported by the terms of the Interlocutory Judgment of Dissolution entered against the bankrupt in state court.

Secondly, Carroll asserts that the bankrupt was also not the "head of a family" within the meaning of Section 1261 of the Civil Code. Here, Carroll again relies on the terms of the Interlocutory Judgment of Dissolution which awards custody of the Ehmke children to Mr. Ehmke. These alleged misrepresentations, Carroll concludes, render the bankrupt's claimed homestead invalid. *See Shumaker v. Biscailuz,* 130 Cal.App.2d 414, 415, 278 P.2d 939 (1955).

■ Both Carroll and the trustee are in error. With regard to the bankrupt's marital status at the time of her homestead declaration, it is clear that she was regarded as a single person for homestead purposes under California law. This is so even

though she was party to a dissolution action in which an interlocutory judgment of dissolution had been entered. *See McGaffey, supra,* 189 Cal.App.2d at p. 218–22, 10 Cal. Rptr. 862; *Harley v. Whitmore,* 242 Cal. App.2d 461, 468, 51 Cal.Rptr. 468 (1966). Thus Carroll relies too heavily on the wording of the Interlocutory Judgment of Dissolution. This document does indeed contain language cautioning the parties that they are "still married". It does so, however, merely in the context of admonishing the parties not to *remarry* until a final judgment of dissolution is entered. *See generally* 6 B. Witkin, *Summary of California Law,* "Husband Wife" § 111 (8th ed.) (remarriage prior to final judgment is bigamous and void).

■ Secondly, the bankrupt's oral testimony confirms her claim that she was the "head of a family" as defined by Section 1261 of the Civil Code at the time she executed and recorded her declaration of homestead. At that time, her daughter Tamara resided with her under her care, and had in fact been residing with her for sometime with Mr. Ehmke's consent. The wording of the Interlocutory Judgment of Dissolution does not change this fact. It is true that the Judgment does award "care, custody and control" of the Ehmke children to Mr. Ehmke. But is equally clear to this Court that the *actual* care of Tamara at all relevant times was undertaken by the bankrupt and not Mr. Ehmke, and he had in fact agreed to that. Owing to this, the Court has concluded that the bankrupt's relationship with her daughter when she filed her declaration of homestead brings her within the contours of the phrase "head of a family" as defined by California law. *See* Cal. Civ.Code § 1261, subd. 2(a) (West).

B. *THE APPLICATION OF SECTIONS 1300–04 OF THE CALIFORNIA CIVIL CODE*

Carroll has raised the additional question of whether the bankrupt chose the proper statutory method of perfecting her home-

stead.[3] He argues that Sections 1300–04 of the Civil Code provided the exclusive means of creating a homestead in the bankrupt's former residence. This is so, Carroll suggests, because the bankrupt was then subject to the Interlocutory Judgment of Dissolution when her declaration of homestead was recorded.

In reaching this conclusion Carroll relies on that portion of the Civil Code entitled "Married Person's Separate Homestead". *See* Cal.Civ.Code §§ 1300 *et seq.* (West). In particular Section 1300 provides:

> Following the entry of a * * * judgment decreeing legal separation of the parties or an interlocutory * * * judgment of dissolution of a marriage, each spouse may execute and acknowledge in the same manner as a grant of real property is acknowledged, a declaration of a married person's separate homestead from the separate property of the spouse so declaring same, or from any property awarded to such spouse by said * * * judgment.

Cal.Civ.Code § 1300 (West).

Great importance is also placed by Carroll and the trustee on the case of *Wiltrakis v. Wiltrakis*, 244 Cal.App.2d 257, 53 Cal.Rptr. 97 (1966). This case, it is said, makes Sections 1300–04 of the Civil Code mandatory where a person attempts to create a homestead after they have become subject to an interlocutory judgment of dissolution.

The bankrupt disagrees with these contentions having already placed reliance on the provisions of Section 1260 of the Civil Code. On these issues the Court is again in agreement with the bankrupt. While the above argument of Carroll and the trustee is not without some force, the Court does not find it persuasive.

First of all, *Wiltrakis* does not go as far as Carroll and the trustee suggest. It does not make Sections 1300–04 of the Civil Code mandatory in the case of a person who wishes to create a homestead after the entry of an interlocutory judgment of dissolu-

tion. The case merely defines the scope of that property from which such a homestead can be selected. That is, that spouse's separate property or property awarded in a property settlement agreement or by court decree. *See Wiltrakis, supra,* 244 Cal. App.2d at p. 258, 53 Cal.Rptr. 97. Here, however, there has been no claim that the property in which the bankrupt chose to perfect her homestead was improperly selected. *See Wiltrakis, supra,* 244 Cal. App.2d at p. 257–58, 53 Cal.Rptr. 97. Owing to this, the holding in *Wiltrakis* has little application here.

■ Secondly, the wording of Sections 1300–04 of the Civil Code does not support the contention advanced by Carroll and the trustee. These sections do not purport to create an *exclusive* means of perfecting a homestead for every person subject to an interlocutory judgment of dissolution, although they may present a *preferred* way of doing so. It is still possible for such an individual to create a valid homestead under Section 1263 of the Civil Code without reference to Sections 1300–04 of the Civil Code or violation of the rule set down in *Wiltrakis.* *See* Cal.Civ.Code §§ 1260–61, 1262–65a (West).

### C. *THE LIEN ASSERTED BY CARROLL*

Carroll finally contends that by reason of the May 11, 1979, stipulation regarding the lis pendens, he has a consensual lien upon the proceeds from the sale of the bankrupt's homestead residence. Both the trustee and the bankrupt reject this contention, and the Court has concluded that they are correct in doing so.

■ With respect to the negotiations regarding removal of the lis pendens and the placement of the sales proceeds in a trust account, counsel for the bankrupt has testified that no lien was granted by that agreement. The Court concurs with this view, as the stipulation relied upon simply allowed

---

**3.** In his original Report of Exempt Property the trustee did not challenge the statutory basis for the bankrupt's claimed homestead. He con-

tended only that the bankrupt's declaration was factually incorrect. Now he joins with Carroll in this argument.

the proceeds from the sale of the homestead to be placed in a trust account pending the outcome of the litigation.

■ Regarding the lis pendens itself, it is clear that its mere filing created no lien of any sort on the homestead property. *See generally* Cal.Civ.Proc.Code § 409 (West); *Contini v. Western Title Ins. Co.*, 40 Cal. App.3d 536, 542, 115 Cal.Rptr. 257 (1974) (purpose and effect is to give notice of action). Moreover, the simple fact that Carroll's lis pendens was recorded prior to the bankrupt's homestead does not give Carroll any superior rights as against the bankrupt. *See Putnam Sand & Gravel Co. v. Albers*, 14 Cal.App.3d 722, 725, 92 Cal. Rptr. 636 (1971).

### D. *THE CONTINUING EXEMPTION OF THE HOMESTEAD PROCEEDS*

■ The bankrupt states that the proceeds from the sale of her homestead property are exempt for a period of six months after the sale of the property, which occurred on June 8, 1979. As authority for this conclusion the bankrupt cites Section 1265 of the Civil Code, which reads in part:

should the homestead be sold by the owner, the proceeds arising from such sale to the extent of the value allowed for a homestead exemption as provided in this title shall be exempt to the owner of the homestead for a period of six months next following such sale.

Cal.Civ.Code § 1265 (West).

Relying on this section, the bankrupt reasons that the six month protection of proceeds afforded by Section 1265 commences upon the sale of the homestead property, and runs without interruption from that date. This is incorrect. As was recently pointed out in *Matter of Widdershoven*, 452 F.Supp. 503 (N.Cal.1978):

Accordingly, the statutory period of exemption must be deemed to have been *tolled* from the filing of the petition until a determination of the exemption claim at which time the bankrupt regains control of the property. To the extent the

proceeds of sale have not been reinvested in homestead or other exempt property at the end of the full period of exemption, excluding the time during which it is tolled, they revert to the trustee's control and become subject to the claims of creditors.

*Widdershoven, supra*, 452 F.Supp. at p. 505 (emphasis added).

Thus, protection under Section 1265 of the Civil Code commenced in this case on June 8, 1979, the date the homestead property was sold, and continued until August 30, 1979, the date the bankrupt filed her petition with this Court. From that time, until the filing of this decision, the running of the sixth month time period under Section 1265 was tolled. Therefore, the bankrupt has approximately four months of protection under Section 1265 remaining.

## IV

## CONCLUSION

In light of the foregoing, the Court has determined that the bankrupt properly created a homestead in her residence which attached to the proceeds derived from its sale. The bankrupt's declaration of homestead contained no false recitals, nor was she obligated to perfect her homestead in accord with Sections 1300–04 of the Civil Code.

Accordingly, the proceeds in question are not subject to administration as part of the bankrupt's estate. Nor are they available to satisfy the claim asserted by Carroll for that period of time specified in Section 1265 of the Civil Code and related caselaw.[4]

This opinion shall constitute findings of fact and conclusions of law as required by Bankruptcy Rule 752.

---

4. *See* Cal.Civ.Code §§ 1240, 1265 (West); *Matter of Widdershoven, supra*, 452 F.Supp. 503.